UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSE CASTILLO-PARTIDA,

    Petitioner,                  Civil No. 04-CV-10031-BC
                                                   Criminal No. 02-CR-20011-BC-01

v.

                                              DISTRICT JUDGE DAVID M. LAWSON
UNITED STATES OF AMERICA,    MAGISTRATE JUDGE CHARLES E. BINDER

    Respondent.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE

### I.    RECOMMENDATION

**IT IS RECOMMENDED** that Petitioner's motion under 28 U.S.C. § 2255 be **DENIED**.

### II.    REPORT

#### A.    Introduction

Pending, pursuant to an Order of Reference from United States District Judge David Lawson (Dkt. 43), is the above-entitled motion filed under 28 U.S.C. § 2255 to vacate Petitioner's federal custodial sentence. The motion was filed on March 11, 2004. (Dkt. 42.) Respondent was directed to file an answer, and after being granted an enlargement of time (Dkts. 45-47), filed an answer and brief in response opposing the motion. (Dkt. 49.) As of

this date, Petitioner has not filed a reply. I therefore conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

### B. Procedural History

On March 13, 2002, the Grand Jury returned a single-count Indictment against Petitioner, charging him with being an alien who previously had been convicted of an aggravated felony and deported from the United States, and who had knowingly and unlawfully re-entered the United States without first having obtained the consent of the Attorney General of the United States in violation of 8 U.S.C. § 1326. (Dkt. 1.) On April 19, 2002, Attorney Philip R. Sturtz filed an appearance on behalf of Petitioner. (Dkt. 12.)

A Rule 11 Plea Agreement was filed on June 20, 2002. (Dkt. 17.) In the agreement, Petitioner stated his willingness to plead guilty to the charge made in the Indictment and stipulated that at the time alleged in the Indictment, he was an alien, who previously had been arrested and deported, and thereafter had unlawfully re-entered the United States without the consent of the Attorney General. (Plea Agreement, Dkt. 17 at 1-2.) The parties stipulated that the sentencing judge should not levy a sentence greater than the midpoint of the applicable guideline range. (*Id.* at 2.) In the worksheets accompanying the plea agreement, the base offense level of 8 was calculated and a 16-level enhancement was added pursuant to sentencing guidelines. (U.S.S.G. 2L1.2(b)(A)(iii).) This yielded an adjusted offense level of 24. The worksheets reflect that Petitioner's prior criminal history included convictions for fleeing and eluding, first-degree retail fraud and delivery of marijuana. (Plea Agreement, Dkt. 17 at Worksheet C.) The worksheets further reflect that the marijuana conviction took

2

place either less than two years after release from imprisonment or while on probation or escape status. These factors led to a calculation of 6 total criminal history points and a criminal history of Category III. A 3-point downward adjustment for acceptance of responsibility was agreed upon by the parties, and those factors yielded a guideline sentencing range of between 46 and 57 months. (*Id.* at Worksheet D.)

A Presentence Investigation Report was prepared by a Probation Officer. The report indicates that Petitioner's criminal history includes a conviction for possession of marijuana which is not shown in the worksheets attached to the Rule 11 Agreement. This yielded one additional criminal history point, resulting in a guideline sentencing range of 57 to 71 months.

Petitioner was sentenced on September 30, 2002. Neither Petitioner nor his counsel objected to the guideline calculations contained in the Presentence Investigation Report. (Sentencing Tr., Dkt. 35 at 3-4.) Judge Lawson elected to sentence Petitioner to the low end of the calculated guideline range and ordered 57 months' imprisonment. (Judgment, Dkt. 30.) In so doing, Judge Lawson stated that he found no reason to depart from the sentence called for by application of the Sentencing Guidelines.

Approximately three months later, Plaintiff filed a notice of appeal. (Dkt. 31.) The United States Court of Appeals for the Sixth Circuit appointed counsel to represent Petitioner on March 14, 2003. (Dkt. 32.) On November 4, 2003, the United States Court of Appeals for the Sixth Circuit affirmed Petitioner's conviction (Dkt. 39), and the instant motion followed approximately three months later.

3

In the motion and accompanying memorandum of law, Petitioner makes two allegations of ineffective assistance of counsel; namely, (1) trial counsel's failure to move for a downward departure based on Petitioner's family history and circumstances; and (2) counsel's failure to raise issues on direct appeal. Petitioner alleges that his trial counsel failed to investigate his background and induced him into a plea, the consequences of which he did not fully understand. Petitioner also argues that counsel failed to investigate Plaintiff's background, utilizing that information in advocating for a downward departure, and that he was erroneously informed that if he pled guilty, he would be sentenced to the low end of the guideline range. Instead, he received the maximum sentence under the guidelines of 57 months. Petitioner reiterates many of these same matters in his affidavit attached to the motion, and, in addition, states that he did not unlawfully re-enter the United States on a previous occasion, averring that "I showed my papers, and I was allowed to re-enter[.]" (Castillo-Partida Aff., Dkt. 42 at i.)

### C. Analysis and Conclusions

### 1. Governing Law of § 2255

In order to prevail on a § 2255 motion, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A § 2255 motion is not a substitute for a direct appeal. When a petitioner raises a claim under § 2255 that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier

4

in a direct appeal; and (2) actual prejudice stemming from the alleged violation. *See Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994). However, the Sixth Circuit has held that a post-conviction motion under § 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)). Here, all of Petitioner's claims are of ineffective assistance of counsel.

### 2. Governing Law of Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Id.* It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that but for counsel's errors, the result would have been favorably different. *Id.* at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."

5

*Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process. In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

### 3. Ineffective Assistance of Counsel – Prior Re-Entry Claim

Petitioner argues that trial counsel, Mr. Sturtz, provided ineffective assistance when he failed to investigate and raise to the Court Petitioner's contention that he had lived in the United States since age eleven and was not deportable. In his memorandum accompanying his motion, Petitioner claims that his parents were already United States citizens when they brought him to this country. (Memorandum of Law, Dkt. 42 at 7.) Petitioner states that he "entered the United States at the early age of eleven years" and that in fact he was "actually a citizen based on his parents having obtained citizenship prior to Petitioner's eighteenth birthday." (*Id.* at 2.)

Attached to the Government's response, however, is an "Order of the Immigration Judge," dated September 7, 2000, in which it is stated that Petitioner had previously been ordered removed from the United States to Mexico, and that he had failed to depart the

United States as required. (Gov't.'s Resp., Dkt. 49 at Ex. C.) At more than one point in the order, the immigration judge specifically found that Petitioner was not a citizen of the United States. Also attached to the Government's response is a "Record of Sworn Statement in Affidavit Form," dated January 17, 2002, signed by Petitioner in the presence of an immigration officer, in which Petitioner explicitly states that he is "Mexican," and that he illegally re-entered the United States in September 2001. (*Id.* at Ex. D.)

At the time Petitioner tendered his plea, Judge Lawson asked him directly:

THE COURT: Are you a citizen of the country of Mexico?

A    Yes, I am Mexican.

THE COURT: All right. Do you have permission to be in the United States now?

A    No, right now I entered with a copy of my passport.

(Plea Tr., Dkt. 36 at 20.)[1]

During his plea, Petitioner agreed without hesitation that he had been deported in 1980 and that he had been charged and convicted of various aggravated felonies and deported again in 2000. (Plea Tr., Dkt 36 at 20-22.) Petitioner agreed that he had returned to the United States and that he never received the permission of the Attorney General to do so. (*Id.* at 23.) When asked to explain what convinced him of his guilt, Petitioner told Judge Lawson, "The government of the United States sent me back to Mexico. I thought it was easy to come back. I came back to be with my family, that's what made me come back to the United States." (*Id.* at 20.)

---

[1] Petitioner had the services of a qualified interpreter at both his plea and sentencing proceedings.

7

In an affidavit attached to the Government's response, Mr. Sturtz specifically states that he "looked into the issue of the Defendant [Petitioner] being a citizen versus his deportation from the country in September of 2000." (Sturtz Aff., Dkt. 49, Ex. B at ¶ 15.) Mr. Sturtz further avers that he inquired into the substance of the earlier citizenship "removal hearing, reviewed the Court records and communicated with Defendant's [immigration counsel]." (*Id.*)

During his presentence interview, at which time Petitioner could have presumably reiterated the argument that he was already a United States citizen, or that his parents were United States citizens, Petitioner told the probation officer preparing the presentence investigation report that:

> [Petitioner] lived with his parents in Mexico until he was approximately 13 years old. At that time he moved with some of his siblings to Luling, Texas. He was there for three or four years. He states he worked in a slaughter house and various other farm-related work. When he was 17, the defendant, along with his brother and sister-in-law, began working as migrant farm workers. they traveled to Minnesota and then worked at various locations in Michigan. When the harvest was completed they went to Arcadia, Florida where they worked in the orange groves. He continued to work as a migrant worker for the next several years.

(Presentence Investigation Report at ¶ 46.)

In light of the inconsistencies between the claims made in the instant motion and the explicit statements made by Petitioner to immigration officials, to the investigating probation officer, and to Judge Lawson while under oath during the plea proceedings, coupled with trial counsel's investigation of Plaintiff's immigration status, I am unable to discern how

8

counsel's failure to contest Petitioner's immigration status could be said to be ineffective assistance of counsel. I therefore suggest that on this issue, Petitioner's motion be denied.

4. **Ineffective Assistance of Counsel – Sentencing Issues**

Petitioner claims that his plea was involuntary and in violation of Rule 11(c) of the Federal Rules of Criminal Procedure. (Memorandum of Law, Dkt. 42 at 9.) Petitioner contends that he would not have pled guilty but for the erroneous information provided him at and prior to the sentencing. (*Id.*) The crux of Petitioner's argument appears to be that he was erroneously informed that if he pled guilty, he would be sentenced to the low end of the guidelines at 46 months. Petitioner claims that he would never had pled guilty if he had been informed that he was facing a maximum sentence of 57 months as opposed to 46 months. (*Id.* at 10.)

During the plea proceedings, Judge Lawson sought to confirm the Petitioner's understanding of the Sentencing Reform Act:

> THE COURT: Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for the court to follow in determining sentences in criminal cases. Have you and Mr. Sturtz talked about how the guidelines would apply in your case?

A  Yes, honorable judge.

> THE COURT: Do you understand that the guidelines are scored based upon the facts as they exist in the case?

A  Yes, honorable judge.

> THE COURT: However, I am the one that determines what the facts are, or determines what the facts are that have been proved and how the guidelines are scored, do you understand that?

9

A    Yes.

>THE COURT: Do you understand that I will not be able to do that, however, that is determine the guideline sentencing in your case, until after a presentence report has been completed and you and the government have had an opportunity to challenge the facts reported by presentence investigator?

A    Yes.

>THE COURT: Do you understand that, therefore, the sentence I impose could be different than the estimate that you and your attorney have discussed and even the estimate that the government has given to me as part of the plea agreement?

A    Yes, I understand, honorable judge.

>THE COURT: Do you understand that after the guideline range has been determined, that I have the authority in some circumstances to depart from the guidelines and impose a sentence that could be more severe or less severe than called for by the guidelines?

A    Yes, I do, honorable judge.

(Plea Tr., Dkt. 36 at 17-18.)

During the plea proceedings, Petitioner unequivocally evidenced his understanding that nobody had made promises to him of any specific sentence and that the final decision as to sentencing was to be made by the Court. (*Id.* at 11-12, 17-18.) The affidavit of attorney Sturtz states that he carefully explained these matters to the Petitioner, including the concept that the Court would be the final arbiter of the sentence. (Sturtz Aff., Dkt. 49 at ¶ 9.)

After its independent review of the record, the sixth circuit concluded:

> . . . A comparison of the plea transcript with Criminal Rule 11, as outlined above, shows the district court's literal compliance with the dictates of Rule 11 and its efforts to provide Castillo-Partida with a meaningful dialogue in this context. The agreement to sentence Castillo-Partida at the "mid-point" of a guideline range to be determined by the district court does not affect the

> voluntary nature of the plea. *See United States v. Stephens*, 906 F.2d 251, 253-54 (6th Cir. 1990). Castillo-Partida's valid guilty plea means that he may not now raise any pre-plea issues for appellate review. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). There is no reason given and no apparent reason to disturb the plea.
>
> There is likewise no error in the sentence on appeal. Castillo-Partida's pro se brief sets forth an issue concerning the computation of the criminal history category. Neither Castillo-Partida nor his counsel, however, made any objections to the guideline computations nor the sentence imposed. "A defendant waives the right to appeal an application of the Sentencing Guidelines when he fails to object in the trial court." *United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001). The punishment imposed, fifty-seven months, was at the lowest end of the applicable guideline range and was seven months less than the: "mid-point" sentence that was the maximum under the terms of the plea agreement.

(*United States v. Castillo-Partida*, Dkt. 39 at 2.)

I can similarly discern no ineffective assistance of counsel on the part of Mr. Sturtz. The record is replete with Petitioner's understanding that the final calculation of the sentencing guidelines and their application is reserved for the sentencing judge, and that any other calculations are no more than recommendations which cannot bind the sentencing judge. Petitioner cannot now use the calculations contained in the Rule 11 Plea Agreement as any allegation of ineffective assistance of his counsel. Furthermore, the claims made in the instant motion entirely overlook the statements made by Mr. Sturtz to Judge Lawson that he had shared both the Presentence Investigation Report and potential guideline calculations with the Petitioner and his family. (Sentencing Tr., Dkt. 35 at 2-4.) I therefore suggest that Petitioner's claims of ineffective assistance relating to his plea and sentencing are without merit, that these claims in no way support a finding of ineffective assistance of counsel, and to the extent the instant motion is based upon these claims, the motion should be denied.

11

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

CHARLES E. BINDER
United States Magistrate Judge

DATED: August 18, 2004

Copies to: Federal Defender's Office, 653 S. Saginaw, St. 105, Flint, MI 48502-1523
Michael J. Hluchaniuk, Assistant U.S. Attorney, Bay City, Michigan
Honorable David M. Lawson, United States District Judge